[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Divorced in 1984, the parties returned to court in August 1995 on the motion of the defendant, Mr. Murphy, seeking to have the plaintiff, Mrs. Murphy, pay a portion of the college tuition of their son, Brian, and on Mrs. Murphy's contempt motion seeking, inter alia, repayment for the alleged tax costs of his claiming exemptions for the parties' minor children in contravention of a modification of the divorce judgment in 1988.[1]
1. COLLEGE EXPENSES
Paragraph 8 of the agreement entered into by the parties at the time of their dissolution, which became an order of the court, provides that "[e]ach party hereby agrees to contribute to the expense of the children's college education to the extent CT Page 947 of his or her ability to do so at that time". The parties' older child, Brian, was graduated from high school in 1995 and enrolled at Hobart College in August of the same year. The annual cost of his enrollment there, including tuition, room, board, books and miscellaneous expenses, is estimated to be $28,000. Without notice to Mrs. Murphy, Mr. Murphy undertook to pay that expense by way of an eight-month payment plan which his financial affidavit of August 29, 1995 indicates is costing him $938 weekly.[2] He seeks contribution from Mrs. Murphy in an amount which she is able to pay, pursuant to Paragraph 8 of the parties' dissolution agreement.
Mr. Murphy's proposal is that the court require Mrs. Murphy to pay approximately 20% of Brian's college expenses for 1995-96, in the amount of $5,600. This represents her approximate share of the parties' combined gross incomes for 1995, as shown on the financial affidavits which they submitted in connection with the hearing of this matter.[3] Mrs. Murphy's proposal, on the other hand, is that the court establish an amount of "basic living expenses" required by each party and order the parties to pay any "excess" over and above that amount toward Brian's education.
The court rejects both approaches. While Mr. Murphy's proposal has the advantage of simplicity, the court concludes that $5,600 is more than Mrs. Murphy is able to pay. And, the court is without sufficient information to establish "basic living expenses" for the two parties.
The court's problem is to find a rational basis for resolving a problem created by the parties' inability or unwillingness to communicate with each other concerning alternative methods of financing Brian's college education. For example, no serious exploration was made of the availability of financial aid to Brian and/or Mrs. Murphy, who is the custodial parent and whose gross annual income is approximately 30% of Mr. Murphy's. Nor was there any consideration of the use of a trust fund available specifically for Brian's educational needs, inter alia, from an irrevocable trust created by his paternal grandmother in 1987.[4]
The court adopts as its basis for resolving this issue, for 1995-96 only, Mrs. Murphy's testimony regarding the results of a limited exploration of the availability of financial aid. While her testimony in this regard was not corroborated by any CT Page 948 documents or other evidence, neither was it contradicted by any testimony or other evidence introduced by Mr. Murphy. Her testimony was that $3,000 would have been required from her and/or Brian as part of a financial aid package.
The court finds that it is within the ability of Mrs. Murphy to pay $3,000 annually toward the college education of Brian, given the parties' respective financial positions at this time. Ten-month payment plans for this purpose are readily available, and Mrs. Murphy's monthly obligation under such a plan would be $300 or approximately $70 per week, an amount which the court finds is within her ability to pay, based on her financial affidavit of August 28, 1995.
It is the order of the court that, over the ten-month period from January through October 1996, the plaintiff reimburse the defendant at the rate of $70 per week for his cost of Brian's college education for the 1995-96 school year. At any time during that period plaintiff may make lump-sum payments toward that expense, and her total payments for that period shall not exceed $3,000.[5]
2. TAX EXEMPTIONS
In 1988 the parties' divorce judgment was modified to provide that Mr. Murphy was to claim the two minor children as dependents for federal income tax purposes only so long as he would have a monetary benefit from doing so. Mrs. Murphy, however, could claim the children even if Mr. Murphy was to have a monetary benefit as long as she reimbursed him for the amount of such benefit. It is undisputed that in 1991, 1992 and 1994, because of his income level, these exemptions were of no monetary benefit to Mr. Murphy. Nevertheless, Mrs. Murphy testified, and Mr. Murphy did not dispute that in each of those years she paid Mr. Murphy an amount intended to reimburse him for the amount of a monetary benefit he claimed.
The payment for these three years totalled $2,071, i.e., $645 in 1991, $690 in 1992 and $736 in 1994. Mr. Murphy testified that it was never his intention to obtain payments to which he was not entitled, and Mrs. Murphy did not pursue her request for a contempt finding on this issue.
The court finds that Mr. Murphy failed to comply with the judgment as modified on April 12, 1988 and, by way of a remedy, CT Page 949 orders that he reimburse Mrs. Murphy in the amount of $2,071 payable in a lump sum within 30 days of the date hereof.
The court presumes to suggest that it is not too early for the parties to begin exploring alternative methods for financing Brian's 1996-97 college year. Their obvious, mutual determination to do what is right for Brian, and for their younger child, Katie, can only be aided by a spirit of open communication and mutual respect and an avoidance of this kind of litigation.
/s/ Shortall, J. SHORTALL